## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

PAUL EDWARD SHIELDS, JR.,    )
    Plaintiff,              )
                             )
v.                             )       CIVIL ACTION NO. 1:19-00184-N
                             )
ANDREW M. SAUL,           )
*Commissioner of Social Security*,  )
    Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Edward Shields, Jr. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") partially denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 11, 13) and those portions of the administrative record (Doc. 9) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure

## I.   *Procedural Background*

Shields filed the subject applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on March 8, 2016. After they were initially denied, Shields requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. Such a hearing was held on December 5, 2017. On May 30, 2018, the ALJ issued a partially favorable decision on Shields's applications, finding him not entitled to a period of disability and DIB, but entitled to SSI benefits beginning March 31, 2017. (*See* Doc. 9, PageID.54-74).

The Commissioner's decision on Shields's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's decision on February 10, 2019. (*See id.*, PageID.43-47). Shields subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such

---

73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 17, 20).

decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). In reviewing the Commissioner's factual findings, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if

interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). If a court determines that the Commissioner reached his decision by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)). [4]

---

[4] Moreover, "district court judges are not required to ferret out delectable facts

buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference

---

ALJ's credibility finding.").

and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). It is also important to note that a court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.*, 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB and SSI requires that a claimant be "disabled," 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Shields met the applicable insured status requirements through June 30, 2016, and that he had not engaged in substantial gainful activity since the alleged disability onset date of June 30, 2012.[7] (Doc. 9, PageID.61). At Step Two, the ALJ determined that Shields had the following severe impairments: degenerative disc disease of the lumbar spine–status post laminectomy and discectomy, chrondromalacia patella of the right knee; degenerative joint disease of the right knee; coronary artery disease with stenting; hyperlipidemia; obesity; post-traumatic stress disorder; and depressive disorder. (*Id.*, PageID.61-62). At Step Three, the ALJ found that Shields did not have an

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005).  For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)."  *Moore*, 405 F.3d at 1211.

impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (*Id.*, PageID.62-64).

At Step Four,[8] the ALJ determined that Shields had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[[9]] with additional limitations[: Shields] could never climb a ladder, rope

---

[8] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[9] "To determine the physical exertion requirements of different types of employment

or scaffold[;] could never kneel or crawl[;] could occasionally climb ramps and stairs, balance, stoop, and crouch[;] would need to avoid work at unprotected heights and around hazardous machinery[;] would need to avoid concentrated exposure to temperature extremes and wetness and avoid exposure to uneven terrain, slippery, icy, and wet surfaces[;] would require the use of an assistive device for ambulation[;] could understand, remember, and carry out simple, repetitive instructions and could persist at that level of complexity for eight hours a day, five days a week consistently[;] would need to avoid more than casual interaction with the general public and could have occasional interaction with co-workers and supervisors for non-collaborative work, defined as work not dependent on working in concert with others to achieve a desired outcome or result[; and] could adapt to routine changes in a work setting that are occasional in nature and gradually introduced." (Doc. 9, PageID.64-71). Based on the RFC and the testimony of a vocational expert,[10] the ALJ determined that Shields was unable to perform any past relevant work. (Doc. 9, PageID.71).

At Step Five, after considering additional testimony from the vocational

---

in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

[10] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

expert, the ALJ found that, prior to March 31, 2017 there existed a significant number of other jobs in the national economy that Shields could perform given his RFC, age, education, and work experience. Therefore, the ALJ found that Shields was not under a disability within the meaning of the Social Security Act through his June 30, 2015 date last insured, and was thus not entitled to a period of disability and DIB. However, the ALJ also determined that, under the Medical Vocational Guidelines (often referred to as the "grids"),[11] Shields became disabled on March 31, 2017, and was thus entitled to SSI benefits beginning on that date. (*See id.*, PageID.72-74).

## IV.   *Analysis*

### A.  Medical Opinion

" 'Medical opinions are statements from physicians and psychologists or other

---

[11] An ALJ may determine whether a claimant has the ability to adjust to other work in the national economy either by consulting a vocational expert, or "by applying the Medical Vocational Guidelines[:]"

> Social Security regulations currently contain a special section called the Medical Vocational Guidelines. 20 C.F.R. pt. 404 subpt. P, app. 2. The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Phillips*, 357 F.3d at 1239–40.

acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).   "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).   "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir.  2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).   "These factors must be considered both singly and in combination.  Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citation omitted). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per

curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.[12]

Among the medical opinions considered by the ALJ was that of Dr. Samuel Williams, a non-examining state agency reviewing psychiatrist who performed a mental RFC assessment on April 22, 2016, based on a review of Shields's medical record at the time. The ALJ assigned Dr. Williams's opinion "great weight," finding it "generally consistent with the objective record." (Doc. 9, PageID.69). In weighing Dr. Williams's opinion, the ALJ specifically discussed various aspects of the opinion, including Dr. Williams's assessment that Shields "would miss one to two days of work a month due to his mental health impairments[;] should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands[, and] that criticism from coworkers and supervisors should be supportive and non-confrontational…" (*Id.*). Shields argues that, despite giving "great weight" to Dr. Williams's opinion, the ALJ reversibly erred by failing to account for those specific portions of Dr. Williams's opinion in the RFC. The undersigned, however, is not persuaded.

First, the ALJ only gave Dr. Williams's opinion "great" weight, not

---

[12]   "The opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440)). On the other hand, the opinions of non-treating physicians "are not entitled to deference ..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam).

On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical opinions.   However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Shields's present applications. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

"controlling" weight, and the opinion of a non-treating source, such as Dr. Williams, is not entitled to controlling weight regardless. *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 857 (11th Cir. 2018) (per curiam) (unpublished) ("An ALJ generally gives an opinion from an examining physician greater weight than a non-examining physician, but the agency's rules do not provide that an examining physician's opinion may receive 'controlling weight' as a treating source might."); Social Security Ruling 96-2P, 1996 WL 374188, at *2 (July 2, 1996) (medical opinion must come from a "treating source" in order to be entitled to "controlling weight"). Second, the Eleventh Circuit Court of Appeals has held that " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 121011 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)). As the Commissioner's brief notes, this rule has been applied in situations where an ALJ gave great weight to a medical opinion but failed to specifically address certain limitations therein. *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (per curiam) (unpublished) ("The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so … However, the ALJ is not required to specifically address every aspect of an opinion or every piece of evidence in the record. *See Dyer*, 395 F.3d at 1211."); *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F.

App'x 531, 534 (11th Cir. 2014) (per curiam) (unpublished) ("[T]he ALJ did not err by failing to specifically address Adams's neurologist's opinion that she should avoid frequent overhead reaching, and that she needed to take 5–minute breaks every 45 minutes, as his written decision made clear that he considered both the neurologist's opinion and Adams's medical condition as a whole. *See Dyer*, 395 F.3d at 1211."); *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) (per curiam) (unpublished) (similar); *Keel-Desensi v. Berryhill*, No. 8:17-CV-2273-T-AEP, 2019 WL 1417326, at *4 (M.D. Fla. Mar. 29, 2019) ("[A]lthough the ALJ did not explicitly incorporate Dr. Hughes's functional limitation, she clearly considered Plaintiff's condition as a whole when formulating the RFC. *See Dyer*, 395 F.3d at 1211. Thus, because the ALJ is exclusively responsible for formulating the RFC, and Dr. Hughes's opinion was not entitled to any special deference, the ALJ did not commit a reversible error by failing to incorporate every aspect of Dr. Hughes's opinion into the RFC…"). *But see Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 871-72 (11th Cir. 2012) (per curiam) (unpublished) (finding reversible error where ALJ gave great weight to a treating physician's RFC but failed to address a specific limitation therein).

Here, after discussing Dr. Williams's opinion, the ALJ stated: "The record on the claimant's depression and PTSD, such as having crying spells, financial impulse control difficulties, and sudden outbursts, justifies restrictions to social interactions, simple work-related decisions, time-off task, and low-pressure work. The claimant is not further limited as the record … indicates the claimant has intact executive

function, judgment, memory, and concentration." (Doc. 9, PageID.69). This statement sufficiently indicates that the ALJ considered Dr. Williams's opinion in conjunction with the other record evidence, and explains why the ALJ found Dr. Williams's opinion – which again, was neither given nor entitled to controlling weight – supported some limitations but not others when compared to the record as a whole. [13] Shields's argument that the ALJ, in giving "great weight" to Dr. Williams's opinion, was required to adopt it in full, is unavailing.

Finally, Shields does not explain how the RFC's limiting him to "simple, repetitive instructions," "casual interaction with the general public," "occasional interaction with co-workers and supervisors for non-collaborative work," and "to routine changes in a work setting that are occasional in nature and gradually introduced," is inconsistent with Dr. Williams's opinion that Shields "should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands[, and] that criticism from coworkers and supervisors should be supportive and non-confrontational…" Moreover, as the Commissioner correctly points out, Dr. Williams actually opined that Shields "may" miss one or two days a month due to his mental impairments. (Doc. 9, PageID.143). The Eleventh Circuit has held that

---

[13] Moreover, as the Commissioner correctly points out, Dr. Williams actually opined that Shields "may" miss one or two days a month due to his mental impairments. (Doc. 9, PageID.143). The Eleventh Circuit has held that an ALJ need not account for such non-definite statements in medical opinions. *See Jacks v. Comm'r, Soc. Sec. Admin.*, 688 F. App'x 814, 820 (11th Cir. 2017) (per curiam) (unpublished) ("Because Dr. Koon's assessment was not definitive in concluding that Jacks 'appears' to have trouble dealing with stress and 'may decompensate' when stressed, the ALJ appropriately gave that assessment less weight and did not specifically include it in the RFC assessment.").

an ALJ need not account for such non-definite statements in medical opinions. *See Jacks v. Comm'r, Soc. Sec. Admin.*, 688 F. App'x 814, 820 (11th Cir. 2017) (per curiam) (unpublished) ("Because Dr. Koon's assessment was not definitive in concluding that Jacks 'appears' to have trouble dealing with stress and 'may decompensate' when stressed, the ALJ appropriately gave that assessment less weight and did not specifically include it in the RFC assessment.").

In sum, Shields has failed to show reversible error in the ALJ's consideration of Dr. Williams's medical opinion.

## B.      Standing and Walking Requirements

By finding that Shields could perform light work with no specific standing or walking limitations, the ALJ necessarily determined that Shields could stand or walk, off and on, for 6 hours in an 8-hour workday. *See Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (per curiam) (unpublished) (noting that "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday" (quoting Social Security Ruling 83–10, 1983 WL 31251)). Shields asserts that medical evidence from a Department of Veterans Affairs disability evaluation he underwent supports greater limitations in his ability to stand and walk. The undersigned finds that substantial evidence nevertheless supports the RFC in this regard.

Shields cites to medical records from a January 27, 2016 medical examination at a Department of Veterans Affairs facility noting that Shields walked with a "limp on the right side due to reported right knee pain[,]" had "a positive

patella inhibition test along with retropatella crepitus[,]" "reported the presence of pain 'inside the knee' during the entire examination[,]" and "report[ed] that his right knee condition had gotten significantly worse …, with aggravated pain after prolonged standing and walking." (Doc. 9, PageID.411-412, 415). The examining nurse opined that Shields was "capable of engaging in modified and limited sedentary and physical activities if he so chooses." (*Id.*, PageID.412).

However, as the Commissioner points out, those examination notes also stated that Shields's right-side limp was "slight" and that he was wearing a neoprene sleeve on the right knee, that x-rays showed only "mild degenerative narrowing" in the right knee, and that "[p]hysical examination of the right knee revealed no swelling/gross deformity and no apparent weakness or instability." (*Id.*, PageID.411-412). The nurse also assessed that Shields would have only mild functional limitation due to chondromalacia, and no functional limitation due to mild degenerative right-knee joint disease. (*Id.*, PageID.411). The ALJ expressly noted the VA nurse's opinion that Shields was "capable of engaging in modified and limited sedentary and physical activities," but explained that the opinion did not define "sedentary" and that it was therefore "difficult to apply the opinion towards the exertional levels within the meaning of the Social Security Act." (*Id.*, PageID.69).

Shields underwent a decompression laminectomy surgery on March 7, 2017. (*Id.*, PageID.712). The ALJ noted that Shields "still had low back pain with radiation to his waist, abdomen, and right leg" seven weeks following the surgery,

but that Shields "could tolerate physical therapy after the surgery[,] and that Shields "reported his pain to be a three out of ten, had no difficulty sitting, balancing, or standing, and was observed to be improving significantly in terms of both mobility and pain…" (*Id.*, PageID.66 (citing PageID.752-776)). The ALJ also observed that, at a pre-surgery examination on February 15, 2016, Shields was noted to "move well … in spite of complaining of right lower extremity pain and radiculopathy…" (*Id.* (citing PageID.383)). Shields points to a few notations in his physical therapy notes indicating that he still experienced numbness in his right foot, but the notes overall (*id.*, PageID.752-776) are largely consistent with the ALJ's view that Shields tolerated physical therapy Shields points out that, at the end of his physical therapy, an assessment indicated that he continued "to have some difficulty standing…" (*Id.*, PageID.753). However, that assessment also recommended "begin[ning] a progressive walking program to improve standing tolerance[,]" indicating that Shields's ability to walk was good and that any lingering difficulties with standing could be improved through exercise. (*Id.*). The ALJ further noted that Shields had been prescribed a cane to assist in mobility. (*See id.*, PageID.67). And for what it's worth, the stage agency medical consultant who made an initial disability determination for Shields on April 22, 2016, based on review of Shields' medical records up to that date, limited Shields to a reduced range of light work with no additional standing or walking limitations. (*Id.*, PageID.68).[14]

---

[14] Shields also cites to various diagnoses in the record, but fails to elaborate on their

"The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). And in reviewing a final decision of the Commissioner, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178. While Shields has certainly shown that the record could support greater standing and walking limitations than what the ALJ imposed, the ALJ's decision is nevertheless a rational view of the record and is supported by substantial evidence. Accordingly, this Court must defer to the ALJ's finding.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Shields's applications for benefits is therefore due to be **AFFIRMED**.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Shields's March 8, 2016 applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and

---

significance, instead appearing to inviting the Court to impermissibly reweigh the evidence and substitute its judgment for the ALJ's. *Winschel*, 631 F.3d at 1178. Moreover, "the mere existence of these impairments does not reveal the extent to which they limit [Shield's] ability to work..." *Moore*, 405 F.3d at 1213 n.6.

Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 2nd day of November 2020.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**